EDWARD A. DUFRESNE, JR., Chief Judge.
 

 bThe Jefferson Parish District Attorney filed a bill of information charging defendant, Allen D. Davenport, with simple burglary of an inhabited dwelling in violation of LSA-R.S. 14:62.2. Defendant pled not guilty and proceeded to trial. After considering the evidence presented, a twelve-person jury found defendant guilty as charged. Defendant filed a motion for new trial, and the trial court denied this motion. Thereafter, the trial court sentenced defendant to twelve years imprisonment with the Department of Corrections. Defendant now appeals.
 
 [1]
 

 FACTS
 

 On the afternoon of November 29, 2007, Nicole Frickey returned to her home in Marrero and found defendant asleep on
 
 *447
 
 her sofa. She immediately left and went to her neighbor’s house to call the police to report that a man she did not know was in her house.
 

 Deputy Wade Hotard of the Jefferson Parish Sheriffs Office responded to the call. Upon entering Ms. Frickey’s house, Officer Hotard found defendant still sleeping on the sofa with a bottle of the victim’s vodka next to him. For safety treasons, Deputy Hotard handcuffed defendant and then yelled at him to try to wake him up. After a minute or two, defendant woke up and mumbled something.
 

 Officer Hotard accompanied defendant out of the house and brought him to the rear of his patrol unit. The deputy advised defendant that he was under arrest and read defendant his
 
 Miranda
 
 rights. Thereafter, Officer Hotard searched defendant and found several items of jewelry and coins belonging to Ms. Frickey in his pockets. Ms. Frickey testified that she did not know defendant prior to the date of the incident and had not given him permission to be in her house.
 

 Defendant testified that he had been drinking for two days prior to the incident and did not remember going into the house or anything about the incident.
 

 ASSIGNMENT OF ERROR NUMBER ONE
 

 On appeal, defendant argues that the trial court erred in denying his motion for a continuance on the morning of trial to give him the opportunity to subpoena his only witness and to hire private counsel. Defendant asserts that he had only been granted one continuance prior to trial and that there was only two and one-half months to prepare for trial, which was so minimal a time it called into question the basic fairness of the proceedings. He contends that the denial of the continuance made a critical impact upon the outcome of his trial, and therefore, he is entitled to a new trial. For the reasons which follow, we find no abuse of discretion in the trial court’s denial of defendant’s motion to continue.
 

 According to LSA-C.Cr.P. art. 712, “[a] motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor.” The Louisiana Supreme Court has consistently held that the decision whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb such a determination absent a clear abuse of discretion. In addition, the Louisiana Supreme Court generally declines to reverse convictions even on a showing of an | improper denial of a motion for a continuance absent a showing of specific prejudice.
 
 State v. Manning,
 
 03-1982 (La.10/19/04), 885 So.2d 1044, 1077,
 
 cert. denied,
 
 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005). This Court, has also recognized that the denial of a motion for continuance is not grounds for reversal absent abuse of discretion and a showing of specific prejudice.
 
 State v. Bartley,
 
 03-1382 (La.App. 5 Cir. 3/30/04), 871 So.2d 563, 567,
 
 writ denied,
 
 04-1055 (La.10/1/04), 883 So.2d 1006.
 

 Continuance to obtain witness
 

 According to LSA-C.Cr.P. art 709, a motion for a continuance based upon the absence of a witness must state the following:
 

 (1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
 

 (2) Facts and circumstances showing a probability that the witness will be available-at the time to which the trial is deferred; and
 

 
 *448
 
 (3) Facts showing due diligence used in an effort to procure attendance of the witness.
 

 The requirements of article 709 are strictly enforced by the courts.
 
 State v. Arabie,
 
 07-806 (La.App. 5 Cir. 3/11/08), 982 So.2d 136, 142. In the present case, we find that defendant failed to satisfy the requirements of LSA-C.Cr.P. art. 709. On the day of trial, defendant asked that the judge allow him time to get a witness. When asked about the witness, he explained “[t]his girl was at a bar where I was drinking at all night, the bar-maid.” Defendant failed to set forth what facts she would testify to and the materiality of the facts. He never said the bar-maid would recognize him from that night and would testify as to what time and how much he was drinking. Further, defendant said nothing of the facts and circumstances showing a probability that the witness would be available at the time to which the trial would be deferred. He also said nothing to show that he used due diligence in pan effort to secure the barmaid’s attendance. As reflected in the record, defendant did not even disclose her name.
 

 Further, defendant failed to show that he was prejudiced by the failure of the witness to testify. According to defendant, the witness was the bar-maid at the bar he had been drinking at the night before. The witness would not have been able to speak of defendant’s intoxication at the time of his unauthorized entry into the house, which was sometime between the time the victim left her residence and arrived home that afternoon. Further, even if someone had testified that defendant was intoxicated prior to entering the victim’s residence, the State, as discussed in the following assignment of error, met its burden of proving that the requisite specific intent was present despite the intoxication.
 

 Since defendant failed to meet the requirements of LSA-C.Cr.P. art. 709 and further failed to show specific prejudice, we find that the trial court did not abuse its discretion in denying defendant’s motion to continue to secure the presence of an unnamed witness.
 

 Continuance to hire counsel
 

 It is well settled that a defendant in a criminal trial cannot, by a last minute change of counsel, force a postponement.
 
 State v. Williams,
 
 00-1850 (La.App. 5 Cir. 4/11/01), 786 So.2d 785, 790-91,
 
 writ denied,
 
 01-1432 (La.4/12/02), 812 So.2d 666. In
 
 State v. Divine,
 
 98-812 (La.App. 5 Cir. 5/19/99), 738 So.2d 614, 616-17,
 
 writ de
 
 nied, 99-2393 (La.2/4/00), 754 So.2d 222, cert.
 
 denied,
 
 530 U.S. 1219, 120 S.Ct. 2227, 147 L.Ed.2d 258 (2000), the defense counsel orally moved for a continuance on the day of trial, saying that the defendant had told him he had hired another lawyer to represent him. The trial court denied the motion, stating that there was a two-month period from the date of arraignment to trial for defendant to retain new counsel or handle any other matters he felt appropriate. This Court could not say the trial court erred in denying the motion.
 

 Lin the present case, the bill of information was filed on December 27, 2007. Defendant was arraigned the following day. Defendant’s trial counsel, John Benz, appeared on defendant’s behalf on January 25, 2008 for a general hearing. At that time, the matter was set for trial on March 10, 2008. On the date set for trial, Mr. Benz requested a continuance. The trial court granted defense counsel’s request and reset the matter for trial on March 12, 2008. On the morning of trial, defendant moved for another continuance which was denied. The matter thereafter proceeded to trial.
 

 
 *449
 
 As recognized by the trial judge, defendant had ample time to hire counsel, if he chose to, prior to the commencement of trial. There was over a two-month period from the date of arraignment to trial for defendant to retain new counsel or handle any other matter that he felt appropriate. Accordingly, we find no error in the trial court’s denial of defendant’s motion to continue to afford defendant more time to hire counsel. Moreover, we note that defendant has not shown any specific prejudice in the denial of the motion.
 

 Based on the foregoing discussion, we find no merit to the arguments raised by defendant in this assignment of error.
 

 ASSIGNMENT OF ERROR NUMBER TWO
 

 In his second assigned error, defendant challenges the sufficiency of the evidence used to convict him. He specifically asserts that the State failed to prove that he had specific intent to commit a simple burglary because he was intoxicated when he entered the dwelling.
 

 The constitutional standard for testing the sufficiency of the evidence, as enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. In the present case, 17defendant was convicted of simple burglary of an inhabited dwelling. That offense is defined is LSA-R.S. 14:62.2 as “the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein.” To convict an accused of simple burglary of an inhabited dwelling, the State must prove: (1) there was an unauthorized entry; (2) the structure was inhabited at the time of entry; and (3) the defendant had the specific intent to commit a felony or theft inside the structure.
 
 State v. Schnyder,
 
 06-29 (La.App. 5 Cir. 6/28/06), 937 So.2d 396, 400. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent is a state of mind and, as such, need not be proven as a fact, but may be inferred from the circumstances and actions of the accused.
 
 State v. Petty,
 
 99-1307 (La.App. 5 Cir. 4/12/00), 759 So.2d 946, 949,
 
 writ denied,
 
 00-1718 (La.3/16/01), 787 So.2d 301.
 

 Voluntary intoxication is a defense to a prosecution for simple burglary only if the circumstances indicate that it has precluded the presence of specific criminal intent. LSA-R.S. 14:15(2). The defendant has the burden of proving the existence of that condition at the time of the offense. The specific legal question is not when the requisite specific intent was formed, but rather whether, at the time the unauthorized entry occurred, the defendant was so intoxicated as to preclude the existence of any specific intent on his part to commit a theft or felony therein.
 
 State v. Sopczak,
 
 02-235 (La.App. 5 Cir. 6/26/02), 823 So.2d 978, 982-983,
 
 writ denied,
 
 02-2471 (La.3/21/03), 840 So.2d 548.
 

 When circumstances exist that intoxication could have precluded specific intent, the burden shifts to the State to show beyond a reasonable doubt that specific intent was present. Whether intoxication is sufficient to negate specific |sintent is a question for the trier of fact.
 
 State v. Dammeron,
 
 98-378 (La.App. 5 Cir. 9/29/98), 719 So.2d 1151, 1154,
 
 writ
 
 
 *450
 

 denied, State v. Dammerau,
 
 98-2830 (La.2/26/99), 738 So.2d 1067.
 

 On appeal, defendant argues that the State failed to prove one element of the offense, that is, that he had the specific intent to commit a felony or theft inside of the house because he was intoxicated.
 

 In the present case, the testimony presented at trial indicated that defendant was intoxicated. Officer Hotard testified that he called EMS to come to the scene to check defendant out because of his intoxicated state. He also testified that he knew defendant consumed alcohol, but did not know the amount. During his testimony, he further stated that he smelled a strong odor of alcohol in the house, that defendant’s eyes were bloodshot, and that his speech was heavily slurred. He also noted that defendant was unsteady at the time, explaining that defendant actually fell to the floor and he had to pick him up to walk him outside. In addition to this testimony, Ms. Frickey testified that she smelled alcohol when she walked inside of her residence. Significantly, a large bottle of vodka was found by the sofa where defendant was discovered sleeping. Ms. Frickey testified that the bottle of vodka was hers and was a little less than half full. When it was discovered, there was not much left on the bottom of the bottle, about a quarter left.
 

 Defendant also testified at trial regarding his intoxicated condition. Defendant testified that he did not remember anything about the incident, but he did recall that he had been drinking two days prior to the incident.
 

 The testimony presented at trial clearly shows that defendant was intoxicated; however, the only evidence which suggests that defendant was intoxicated at the time of the unauthorized entry was the testimony of defendant. Even assuming that the jury believed defendant’s testimony that he was intoxicated when he entered the house, we find that the State nonetheless proved beyond a 19reasonable doubt that defendant had the requisite specific intent to commit a theft within the residence.
 

 The intent to commit a theft may be inferred from the circumstances that surround the commission of the offense.
 
 State v. Pike,
 
 426 So.2d 1329, 1333 (La.1983). In this case, it can be inferred that defendant had the intent to commit a theft within the residence because items were rummaged through and moved out of their normal positions in the residence.
 
 State v. Vortisch,
 
 00-67 (La.App. 5 Cir. 5/30/00), 763 So.2d 765, 768. Further, as revealed by the search of defendant’s pockets, defendant actually took items from the residence that belonged to the victim.
 

 In the present case, testimony was presented that when the victim arrived home, the thermostat for the air conditioner was different than the way she had left it. Ms. Frickey testified that someone would have had to pull the lever all the way down. Several items in the house were moved or were out of place. She testified that the DVD player was out of its normal position and was unplugged. She explained that to unplug the DVD player, defendant would have had to move the entertainment center and then unplug it from the TV and from the wall.
 

 Ms. Frickey also noticed that in the front bedroom, a closet door was opened and things in the closet were rummaged through. Some things were on the floor that had been previously hung on hangers. Also, a video camera that was on the shelf in the closet had been moved to the bed. The case had been opened and some of the wires were pulled out of it. An empty safe in the closet was also opened. It appeared things had been moved to get to the safe. Ms. Frickey also noticed in the bathroom
 
 *451
 
 of the master bedroom that a vanity where jewelry was kept was opened and the drawers had been pulled completely out and emptied.
 

 Coins were removed from the victim’s son’s piggy bank. Ms. Frickey explained that the defendant would have had to open the bank to see what was in it. | 1 (/Defendant was found sleeping with his head on some pillows and an afghan over his legs. Ms. Frickey testified that the afghan defendant was using would have been removed from a chair across from the sofa.
 

 Defendant was searched and several items were pulled out of his pockets. Ms. Frickey identified items taken from the defendant’s pockets as jewelry and coins that had come from her house.
 

 In the present case, the evidence of intoxication was considered by the jury in determining if defendant had the necessary specific intent. In returning a verdict of guilty as charged, the jury indicated a belief that the State had proved all of the necessary elements of the crime, including specific intent. After viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have found, beyond a reasonable doubt, that the evidence was sufficient to support defendant’s conviction.
 

 Accordingly, this assignment of error is without merit.
 

 ERROR PATENT DISCUSSION
 

 We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Wetland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). Our error patent review reveals that the trial court failed to inform defendant of the time period within which to apply for post-conviction relief, as required by LSA-C.Cr.P. art. 930.8. We note that although the commitment indicates defendant was advised of the two-year prescriptive period for filing post-conviction relief, the transcript does not so reflect. In the past, this Court has ordered the trial court to properly advise defendant of the prescriptive period under LSA-C.Cr.P. art. 930.8 by written notice within ten days of the rendition of this Court’s opinion and then to file written proof in the record that defendant received the notice. However, in
 
 State v. Morris,
 
 40,322 (La.App. 2 Cir. 1/25/06), 920 So.2d 359, 363, the Second Circuit corrected this error patent by lnway of its opinion rather than a remand. In accord with
 
 Morris,
 
 we advise defendant by this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. arts. 914 or 922.
 

 Accordingly, for the reasons set forth herein, we affirm defendant’s conviction and sentence.
 

 CONVICTION AND SENTENCE AFFIRMED.
 

 [1]
 

 . At the time this appeal was filed, multiple offender proceedings were pending in the district court.